STATE OF CONNECTICUT *v.* WILLIAM S. DALTON
(AC 25084)

DiPentima, Gruendel and Harper, Js.

Argued November 29, 2006—officially released March 27, 2007

*Carlos E. Candal,* special public defender, for the appellant (defendant).

*Jessica Probolus,* special deputy assistant state's attorney, with whom, on the brief, were *James E. Thomas,* state's attorney, and *John F. Fahey,* senior assistant state's attorney, for the appellee (state).

*Opinion*

DiPENTIMA, J. Following a trial before the court, the defendant, William S. Dalton, was found guilty of sexual assault in the first degree in violation of General Statutes § 53a-70 (a) (1) and not guilty of kidnapping in the first degree in violation of General Statutes § 53a-92 (a) (2) (A). The defendant's sole issue on appeal is that the court failed to ensure that his waiver of his right to a jury trial was knowing, voluntary and intelligent as required by the federal and state constitutions. We

disagree and, accordingly, affirm the judgment of the trial court.

The following facts and procedural history are relevant to our resolution of the defendant's claim. On December 9, 2002, the defendant was arrested and charged with one count of sexual assault in the first degree. On October 27, 2003, the defendant pleaded not guilty to that charge and waived his right to a jury trial. Following the defendant's election to be tried by the court, the court, *Solomon, J.*, canvassed the defendant to ensure that he was knowingly, voluntarily and intelligently waiving his right to a jury trial. On October 29, 2003, the state filed a substitute information that contained an additional criminal charge of kidnapping in the first degree. The defendant again pleaded not guilty to the sexual assault charge and not guilty to the kidnapping charge. The defendant again elected to waive his right to a jury trial. The court, *Koletsky, J.*, questioned whether the defendant had previously been canvassed with respect to his decision to waive his right to a jury trial. The defendant, through defense counsel, indicated that he had been canvassed previously by Judge Solomon. A court trial was held on October 29 and 30, 2003, and Judge Koletsky found the defendant guilty of the sexual assault charge, but not guilty of the kidnapping charge. The defendant received a total effective sentence of fifteen years incarceration, execution suspended after twelve years, with ten years probation. This appeal followed.

The defendant claims that the court failed to ensure that his waiver of his right to a jury trial was knowing, voluntary and intelligent pursuant to the sixth amendment to the United States constitution, article first, § 19, of the constitution of Connecticut, General Statutes § 54-82b and Practice Book § 42-1. The defendant concedes that he failed to preserve his claim for our review and now seeks review under *State* v. *Golding*, 213 Conn.

233, 239–40, 567 A.2d 823 (1989),[1] or the plain error doctrine. See Practice Book § 60-5.[2] We will review the defendant's claim because the record is adequate for our review and his claim is of constitutional magnitude. We conclude, however, that the defendant has failed to satisfy the third prong of *Golding*.[3]

We begin by setting forth the applicable law on the waiver of the right to a jury trial. "The right to a jury

[1] Under *Golding*, "a defendant can prevail on a claim of constitutional error not preserved at trial only if *all* of the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt. . . . The first two questions relate to whether a defendant's claim is reviewable, and the last two relate to the substance of the actual review." (Citation omitted; emphasis in original; internal quotation marks omitted.) *State* v. *Jordan*, 64 Conn. App. 143, 150, 781 A.2d 310 (2001); see also *State* v. *Estrella*, 277 Conn. 458, 468 n.15, 893 A.2d 348 (2006).

[2] "The plain error doctrine is reserved for truly extraordinary situations where the existence of the error is so obvious that it affects the fairness and integrity of and public confidence in the judicial proceedings. . . . A party cannot prevail under plain error unless it has demonstrated that the failure to grant relief will result in manifest injustice." (Internal quotation marks omitted.) *State* v. *Smith*, 275 Conn. 205, 240, 881 A.2d 160 (2005). The plain error doctrine is not implicated here.

[3] The plaintiff asks this court to review this case for structural error. "In considering the nature of a claimed constitutional violation, although typically such violations are reviewed for harmless error, there is a limited class of violations that we review for structural error. Structural [error] cases defy analysis by harmless error standards because the entire conduct of the trial, from beginning to end, is obviously affected . . . . These cases contain a defect affecting the framework within which the trial proceeds, rather than simply an error in the trial process itself. . . . Such errors infect the entire trial process . . . and necessarily render a trial fundamentally unfair . . . . Put another way, these errors deprive defendants of basic protections without which a criminal trial cannot reliably serve its function as a vehicle for determination of guilt or innocence . . . and no criminal punishment may be regarded as fundamentally fair." (Internal quotation marks omitted.) *State* v. *Latour*, 276 Conn. 399, 410, 886 A.2d 404 (2005). Because we conclude that the defendant has failed to satisfy the third prong of *Golding*, review for structural error is unnecessary.

trial in a criminal case is among those constitutional rights which are related to the procedure for the determination of guilt or innocence. The standard for an effective waiver of such a right is that it must be knowing and intelligent, as well as voluntary. . . . Relying on the standard articulated in *Johnson* v. *Zerbst*, 304 U.S. 458, 464, 58 S. Ct. 1019, 82 L. Ed. 1461 (1938), we have adopted the definition of a valid waiver of a constitutional right as the intentional relinquishment or abandonment of a known right. . . . This strict standard precludes a court from presuming a waiver of the right to a trial by jury from a silent record. . . . In determining whether this strict standard has been met, a court must inquire into the totality of the circumstances of each case. . . . When such a claim is first raised on appeal, our focus is on compliance with these constitutional requirements rather than on observance of analogous procedural rules prescribed by [General Statutes § 54-82b (b)] or by . . . Practice Book [§ 42-1]." (Citations omitted; internal quotation marks omitted.) *State* v. *Ouellette*, 271 Conn. 740, 751–52, 859 A.2d 907 (2004).[4]

The defendant concedes that he was thoroughly canvassed by Judge Solomon and knowingly, voluntarily and intelligently waived his right to a jury trial with respect to the sexual assault charge.[5] The defendant

[4] The defendant asserts that the canvass was inadequate in violation of article first, § 19, of the constitution of Connecticut. That claim, however, does not meet the standard enunciated in *State* v. *Geisler*, 222 Conn. 672, 684–86, 610 A.2d 1225 (1992) (defendant must provide independent analysis under particular provision of state constitution); see also *State* v. *Pierre*, 277 Conn. 42, 74 n.12, 890 A.2d 474, cert. denied, 547 U.S. 1197, 126 S. Ct. 2873, 165 L. Ed. 2d 904 (2006). Because the defendant's state constitutional claim was not briefed, we deem it abandoned.

[5] "The Court: [L]et's talk a little bit about what you are doing here today. First of all, I am advised that you have made a decision that you want to waive your right to a jury trial. Do you want—is that—is that your decision, sir?

"[The Defendant]: That's correct, Your Honor.

"The Court: Have you discussed this with [defense counsel]?

claims that when the state added the additional charge

"[The Defendant]: Yes, I have, Your Honor.

"The Court: And have you asked him questions about your options, whether it be a jury trial or a bench trial?

"[The Defendant]: I have, Your Honor.

"The Court: All right. Has he answered all your questions to your satisfaction?

"[The Defendant]: Yes, Your Honor.

"The Court: All right. Now, do you understand with respect to a bench— a jury trial, what we would do is have—you would select six jurors? In addition to those six, there would be two alternates that would be selected. And those jurors, after the case was presented, would have to go back, and they would deliberate and they would have to agree, all of them, six of them together, beyond a reasonable doubt, to find you guilty or if they didn't find beyond a reasonable doubt those facts, then they would find you not guilty. Do you understand that?

"[The Defendant]: Yes, Your Honor.

"The Court: All right. And do you understand one of the benefits of a jury trial is, to the extent that issues come up, which are not appropriate for the fact finder, in a jury trial, the judge sends that jury out and can discuss those issues without affecting the jury?

But in a bench trial, it is a little bit different, because if there are issues that come up regarding admissible versus nonadmissible evidence, the guy who is going to make the legal decision is also the same person who is going make the decision whether you are guilty or not guilty. So, he does hear that information. He will also tell you, however, as we are able to do, that he will disregard anything that is not admissible. But it will—it will have been brought to his attention nevertheless. Do you understand that, sir?

"[The Defendant]: Yes, Your Honor.

"The Court: All right. And obviously, with respect—one of the things that can't happen in a bench trial that could happen in a jury trial, is [that] you could have a hung jury in a jury trial because there is a disagreement as to whether there is proof beyond a reasonable doubt.

"With one juror, namely, the judge, then you're never going to have a hung jury; it is either going to be guilty or not guilty. Do you understand that?

"All right. Other than that, same rights of cross-examination, so on and so forth. And of course, you do not have a right to pick a judge, so it's going—I can tell you who it is going to [be] only because I know who is next up on the rotation. All right. And that's going to be Judge Koletsky. Anything else you want me to canvass on?

"[The Prosecutor]: No, sir.

"The Court: All right. [Defense counsel], anything you want me to canvass on?

"[Defense Counsel]: Satisfied, Your Honor.

"The Court: All right. Again, this is a voluntary decision on your part, sir?

"[The Defendant]: Yes, Your Honor.

of kidnapping, he was not properly canvassed by Judge Koletsky with respect to both the sexual assault charge and the kidnapping charge.[6]

The record shows that the defendant was represented by counsel at all times and was thoroughly canvassed by Judge Solomon, who determined on the basis of that canvass that the defendant knowingly, voluntarily and intelligently waived his right to a jury trial. After the charge of kidnapping was added, the defendant pleaded not guilty to both charges and elected a court trial. At that time, Judge Koletsky and counsel referred to the defendant's previous canvass by Judge Solomon and the defendant's election to waive a jury trial.[7] On the

"The Court: Nobody is forcing you to do this?

"[The Defendant]: No.

"The Court: In the past forty-eight hours, have you consumed any alcohol, narcotics or medications of any type?

"[The Defendant]: No.

"The Court: So, you know what you are doing?

"[The Defendant]: Yes.

"The Court: Do you have any questions you want to ask me about your decision?

"[The Defendant]: No.

"The Court: All right. Very good. You also understand, sir—I should indicate this as well—that after this judge hears the case, if he finds you guilty, just as he would in a jury trial, he's the one who sentences you. Do you understand that?

"[The Defendant]: I—yes.

"The Court: All right. Very good. All right. Note the waiver for the record. Matter will proceed to a bench trial. You'll be in Judge Koletsky's chambers tomorrow at ten o'clock."

[6] In a footnote in its principal brief to this court, the state notes that because the defendant was found not guilty of the kidnapping charge, the appeal is moot. That argument warrants little discussion. Because the defendant is claiming that the second canvass with respect to *both* of the charges was defective, mootness does not apply.

[7] The following exchange took place during Judge Koletsky's canvass of the defendant:

"The Clerk: You've been charged by long form information in the first count with the crime of sexual assault in the first degree in violation of . . . General Statutes § 53a-70 (a) (1) at the town of Enfield on or about September 17, 2002. How do you plead; guilty or not guilty?

"[The Defendant]: Not guilty.

basis of the totality of those circumstances, we conclude that the defendant was adequately canvassed, and knowingly, voluntarily and intelligently waived his right to a jury trial. In support of our conclusion, we note that our Supreme Court similarly has held that when a defendant knowingly, voluntarily and intelligently waived his right to a jury trial and then is charged with additional crimes to which he again elects to waive his right to a jury trial, the defendant cannot complain on appeal that his election for a court trial to the additional charges was compromised. See *State* v. *Hafford*, 252 Conn. 274, 305–306, 746 A.2d 150, cert. denied, 531 U.S. 855, 121 S. Ct. 136, 148 L. Ed. 2d 89 (2000); see also *State* v. *Crump*, 201 Conn. 489, 503–504, 518 A.2d 378 (1986) (jury trial waiver on substitute information valid despite lack of canvass where record showed defendant "advised of his constitutional rights, that he personally signed a waiver of a jury trial, and that he ratified or acquiesced in that waiver after pleading to the substitute information").

In *Hafford*, the defendant was charged with capital felony, murder and felony murder, to which he elected to waive his right to a jury trial. *State* v. *Hafford*, supra, 252 Conn. 300. He then was charged with additional crimes. Id., 302–304. After a canvass similar to the one presented in this case, the defendant again waived his

---

"The Clerk: And in count two, you're charged with the crime of kidnapping in the first degree in violation of . . . General Statutes § 53a-92 (a) (2) (A) at the town of Enfield on or about September 17, 2002. How do you plead; guilty or not guilty.

"[The Defendant]: Not guilty.

"The Clerk: And how do you wish to be tried; by a court or by a jury?

"[The Defendant]: By the court.

"The Clerk: Thank you very much.

"The Court: [Defense counsel], I take it your client has been previously canvassed by Judge Solomon about his waiver of a jury trial?

"[Defense Counsel]: Yes, sir.

"The Court: All right. Ready to proceed?"

right to a jury trial on all of the charges.[8] Id., 304. On appeal, the court held that where the "judge and counsel then referred to the defendant's previous election waiving a jury trial, and the defendant made the same election as to all charges," the defendant's claim that his waiver was not voluntary, knowingly and intelligent with respect to the all of the charges must fail. Id., 306.

On the basis of the totality of the circumstances in the present case and with *Hafford* as a guide, we conclude that the defendant's argument also must fail, as the court properly ensured that the defendant's waiver of his right to a jury trial with respect to both of the charges was knowing, voluntary and intelligent, as required by the federal constitution.

The judgment is affirmed.

In this opinion the other judges concurred.

---

[8] The defendant contends that *Hafford* is distinguishable from the present case because in *Hafford*, the defendant was asked by the judge whether he elected to be tried by a jury or the court. *State* v. *Hafford*, supra, 252 Conn. 304 n.17. In addition, in *Hafford*, it was defense counsel who answered for the defendant. Id. In the present case, the clerk posed the question to the defendant about his election, and the defendant answered.

As our Supreme Court has stated on many occasions, "Both General Statutes § 54-82b (b) and Practice Book § 893 [now § 42-1] require that the judge advise the defendant at the time he pleads of his right to a trial by jury. We have indicated that a literal compliance with these provisions is not essential if the record affirmatively discloses that the defendant intelligently and knowingly did waive his right to trial by jury." (Internal quotation marks omitted.) *State* v. *Marino*, 190 Conn. 639, 645, 462 A.2d 1021 (1983); *State* v. *Shockley*, 188 Conn. 697, 711, 453 A.2d 441 (1982). On the basis of the facts and circumstances of the present case, we find the distinctions noted by the defendant to be distinctions without a difference.